DAvis, J.,
delivered the opinion of the court:
Plaintiff, a resident of Philadelphia, was employed by William Eeed Lewis, then recently appointed consul at Tangier, “ as an interpreter and general body servant at the United States consulate at Tangier, at a salary of $30 (United States money) per month, beginning February 19,1887. It is agreed that after the expiration of ten months from February 19,1887, the salary is to be decreased to $20 per month.”
It was further understood and agreed that Azogue should “ pay his own board and traveling expenses.”
In 1888 or 1889 (the testimony is conflicting as to the date) a difference arose between the consul and plaintiff, which resulted in severing their relations.
This action is now brought against the United States for payment of plaintiff’s wages from April 1, 1888, to August 31, 1889, when, according to his theory of the case, the separation took place. We must first discover whether the United States were a party to any contract with plaintiff The agreement signed by the consul and plaintiff negatives such an inference, as it shows that “ William Eeed Lewis, a citizen of the State of Pennsylvania, U. S. A.,” not William Eeed Lewis as consul, agreed to employ and pay the plaintiff, described as “ Earn on Azogue, a citizen of the United States,” who upon his part agreed “tó perform all duties assigned to him to the best of his ability;” that is, duties assigned to him “by the party of the first part,” who was the aforesaid “citizen of the State of Pensylvania,U. S. A.” Further, the contract was to be “ terminated at any time by either party on thirty days’ notice.” The contract, on its face, was between private individuals, and it provided for two kinds of service, one of which is not compensated by the Government, to wit, that of a “ general body servant;” and it was terminable upon notice, which the Government never stipulates to give to a subordinate civil employé, and which it does not require from him; nor was a Government officer to terminate it, but to Lewis, personally, was reserved that power; it was not given to the consul, who might be another individual, or to the vice-consul in the consul’s absence, much less was it reserved to a superior officer. There is nothing in the agreement showing an intention or desire to bind the United States; there is in it every mark of a purely private and personal transaction.
*433 The employment of Azogue as interpreter in the consulate at Tangier was not reported to tbe Department of State by the consul otherwise than by including his name in his quarterly accounts and in the list of emyloyés of the consulate. The Department of State neither authorized nor forbade, neither approved nor disapproved, the selection; it simply assigned to the consul a certain sum of money with which he could pay an interpreter — any interpreter he chose to employ.
Section 26 of the Consular Regulations of 1888 provides for salaried interpreters at certain posts (see Rev. Stat., 1678 to 1680, 1692, 1693, 1740), the expenditure required to be made under the direction of the Secretary of State, and Tangiers is not one of those posts. This section recognizes as a fact that some of the interpreters are appointed directly by the President and that those at the more important posts receive a commission. The plaintiff received no appointment from any officer of the Government in Washington, and his only commission was the personal agreement we have already cited, an agreement which it is safe to assume would not have received the approval of the Department, of State had it been brought to the attention of that Department. The same section of the regulations recognizes that the duty of nominating an interpreter is intrusted to the head of the consulate, and Azogue was never nominated as interpreter to the Department of State.
Section 42 of the regulation and sections 1756 and 1757 (23 Stat. L., 22) of the Revised Statutes require the interpreter to take the oath of office. It does not appear that plaintiff took that oath. (See also §§ 43, 532, Regulations; see, to the same effect, Regulations, 1881, §§ 5, 22, 37, 38, 39, 66, 67, 114, 425.)
The regulations of 1881 were in force when the contract in suit was made. They contained substantially the same provisions as the regulations of 1888.
The only statutory recognition of an interpreter at Tangiers is contained in appropriation acts. Thus, in the Diplomatic and Consular Appropriation Act, approved July, 1886, under the head of “contingent expenses, foreign missions” (although the post at Tangiers is not a mission, but a consulate) appears this clause:
“For the purpose of enabling the President to provide, at the public expense, * * * for rent, postage, telegrams, furniture, messenger service, clerk hire, compensation of cavasses, *434 guards, dragomans, and porters, including compensation of interpreter, guards, and Arabic clerk at the consulate at Tangiere,” etc. (24 Stat. L., 108; also 24 Stat. L., 480; 25 Stat. L., 248; Stat. L., 698.)
The same provision occurs in subsequent statutes, the only-difference being that in two of the acta the word “janitors” appears before the words “ and porters.” The Department of State thereupon allowed the consulate at Tangiere the sum of $800 per annum (during the period covered by this action) “for interpreter, guards, and Arabic clerk,” out of which the interpreter was paid at the rate of $280 a year. Therefore, in the appropriation acts and by the Department of State, the interpreter was classed among the subordinate employés of the consulate whose tenure depended upon the will of the consul. He fell into the same category as the clerks, guards, cavasses, janitors, and porters, who are employed and discharged by the consul as he may find them needful to the consulate or satisfactory to him in service.
The supervision exercised by the Department of State over this class of employés is limited to the allotment of the proportionate share of the total appropriation for contingentexpenses, to care that the allotment is properly expended, and it holds the consul responsible for the conduct of his consulate — that is, for the acts of his subordinates. The Secretary of State would not and could not, in practice, indicate the individuals to be employed as clerks, janitors, cavasses, or porters in all the consulates entitled to such service.
The small sum allowed the consulate at Tangiere would not be alone sufficient to support an interpreter, and it must be assumed thattheDepartmentcontemplatedeither that he should be allowed to engage in business under the exception provided for in section 425 of the regulations of 1881, and the Department gave no such authority, or, what is more likely, that the consul should not employ continuously an interpreter, but only from time to time, as the services might become necessary, when payment was to- be made for the time when the interpreter was actually employed.
The Consular Regulations (§§ 28,29, and 484, of 1888; see also regulations 1881, §§ 24, 25, and 70) leave the appointment of office clerks to the consuls’ discretion, with a reservation to the Department in special cases; the other classes of subordinates *435 are not mentioned in the regulations, and their employment, therefore, rests with the head of the consulate in the absence of action by the Department.
We conclude that the agreement between Azogue and Lewis was a contract between individuals, to which the United States were not a party.
There is, however, another difficulty in plaintiff’s way. His contract was for double service, for which he was to be paid at first $30 a month, later $20 a month, he to pay his own board and traveling expenses; the services to be rendered for this emolument were first those of a body servant (without board or traveling expenses), for which the United States never pay, and second those of interpreter. The court is quite unable to determine (even if plaintiff’s contention as to the law be correct) what proportion of the monthly allowance of $30 or $20 should be given for the one service and what for the other; and as he contracted for the two inconsistent services,he can not recover the total ($280) allowed by the Department to the consul for an interpreter, without showing, which he has not done here, that his agreement with that officer contemplated that this sum was to be paid for his services as an interpreter alone.
Petition dismissed.